FILED

OCT 3 0 2007
OCT. 30, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JH

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| FUCHS LUBRICANTS CO., a Delaware Corporation, | ) | 07CV6140 |
|  | ) | JUDGE LEINENWEBER |
| Plaintiff, | ) | MAG.JUDGE SCHENKIER |
| v. | ) |  |
| NANCY HUDAK, an individual, | ) |  |
| Defendant. | ) |  |

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, FUCHS LUBRICANTS CO. ("FLC"), by and through its attorneys, Seyfarth

Shaw, LLP, for its Verified Complaint for Injunctive and Other Relief against Defendant,

NANCY HUDAK ("HUDAK"), individually, states as follows:

### NATURE OF ACTION

1.    FLC brings this action seeking injunctive and other relief against Hudak for her

violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, ("CFAA") and the

Illinois Trade Secrets Act, 765 ILSC § 1065 *et seq* ("ITSA").

2.    Hudak, a former FLC Laboratory Director, violated the CFAA by purposefully

and without authorization accessing and downloading on to her own external hard drive, FLC's

trade secrets and other confidential information maintained on FLC's protected computerized

systems and databases.

3.    Hudak also violated ITSA by using and disclosing, or threatening to use or

disclose FLC's trade secrets in her new employment. Hudak further violated and threatens to

continue to violate ITSA, by accepting and assuming employment with a direct competitor of

FLC that will inevitably require her to use and disclose FLC's Trade Secrets.

4.    FLC is in need of immediate injunctive relief that will prevent Hudak from continuing to misappropriate or threatening to misappropriate FLC's trade secrets and/or other confidential and proprietary information. FLC also seeks immediate preliminary injunctive relief that requires Hudak, along with her respective agents, employers, employees, attorneys and those persons in active concert or participation with them, to account for the whereabouts of and to return all of FLC's trade secrets and/or other confidential information that are in Hudak's possession, custody and control. Finally, FLC seeks immediate preliminary injunctive relief requiring Hudak, along with her respective agents, employers, employees, attorneys and those persons in active concert or participation with them, to produce for inspection all computers in her possession, custody and/or control on which FLC's confidential and proprietary information may reside.

## PARTIES

5.    FLC is a Delaware corporation, with its corporate headquarters and principal place of business in Harvey, Illinois. FLC, an operating unit of the Fuchs Worldwide Group, manufactures, markets, and sells high-quality lubricants to a wide range of American industry.

6.    Hudak is a citizen of the State of Connecticut, residing at 1012 West Lake Avenue, Guilford, Connecticut 06437.

## JURISDICTION AND VENUE

7.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon a claim arising under the Computer Fraud and Abuse Act, Title 18 U.S.C. § 1030, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court also has original jurisdiction of this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.

-2-

8.   This Court has personal jurisdiction over Hudak, and venue is proper in this District under 28 U.S.C. § 1391(a) because Hudak (1) has breached and threatens to breach duties to FLC in this District; (2) was doing and transacting business in Illinois during the time period relevant to this lawsuit; and (3) performed contracts substantially connected to Illinois.

## FACTUAL BACKGROUND

### A.   Fuchs Lubricants Co. and Its Business

9.   FLC is a Delaware corporation with its corporate headquarters and principal place of business located in Harvey, Illinois.  FLC has other facilities located throughout the United States.

10.   FLC is the U.S. operating unit of the Fuchs Worldwide Group, the world's leading manufacturer and supplier of industrial and specialty lubricants.  FLC is wholly owned by Fuchs Petrolub A.G.  FLC manufactures, markets and sells high-quality lubricants to a wide range of American industry ranging from underground mines to pharmaceutical manufacturers to makers of complex metal components such as automotive, appliance and aerospace manufacturers.

11.   FLC's manufactures, markets and sells a standard line of lubricant products (known as its "core lubricants") to its customers who use those products in hundreds of applications.  However, FLC's success has been due to not only its manufacture and sale of its core lubricant products but also to FLC's willingness and ability to tailor products to meet specific customer needs.

12.   As a result, FLC is constantly developing new products to meet the ever-changing demands of modern industry.  On-going local development, combined with access to Fuchs

-3-

Group technology from around the globe, ensures our customers of products and services that are truly "leading edge."

13.     FLC has assembled product specialist teams, located in two major U.S. research and development facilities located in Harvey, Illinois and Kansas City, Kansas. Those teams are constantly modifying existing products and developing new products to meet the challenge of today's highly competitive business environment.

**B.     The Development of Ecocool S-761**

14.     FLC's most important and innovational metalworking product of the last two years is a semi-synthetic lubricant that FLC has developed called Ecocool S-761 ("761").

15.     761 is a uniquely formulated water soluble oil for machining and grinding of metal components. It is especially effective on aluminum, titanium and steel and performs exceptional in difficult applications such as in the aircraft and exotic metals industries.

16.     761 out performs its competitive products because of, among other things, its unique ability to resist degradation while in machining equipment sumps, which is known in the industry as "sump stability."

17.     The chemical formula for 761 is proprietary to FLC and is maintained in a confidential manner by FLC. The formula is lengthy and complex and consists of: (a) the names of the chemical ingredients that comprise the product, (b) the amount of those ingredients that need to be added to make the product, (c) the conditions under which the ingredients must be added, and (d) the order in which ingredients are mixed.

18.     FLC formally launched 761 in the market in April 2006 and it has quickly become one of FLC's top products and the lead product for its application.

-4-

19.    After the formula was adjusted to its current formulation, FLC's customer base for the product skyrocketed from 2-3 customers to approximately 30 customers over the course of 30 months, quickly growing to its current base of 60 customers. 761's revenue for the period of January through September 2007 increased by more than 500% over the product's total revenue for calendar year 2006. This growth is exceptional when one considers that it may take six to eighteen months to gain approval from a customer to convert from the incumbent metalworking fluid to the material that a manufacturer such as FLC would propose to supply.

**C.    FLC's Confidential and Proprietary Information**

20.    FLC has invested substantial time and money gathering and developing confidential and proprietary information concerning the lubricant production industry, including information regarding its customers, its products, and its competitors and their products.

21.    This confidential and proprietary information includes, but is not limited to, chemical formulations and blends for its existing products and products in development, raw material information (such as composition, sources, pricing and specifications), material cost estimates, customer information, competitor data, and competitor product information.

22.    Authorized employees access FLC's computer networks and databases from FLC's numerous offices and facilities throughout the United States in order to carry out their duties in developing, manufacturing, and selling FLC's products to customers in interstate commerce throughout the United States and across state lines.

**D.    FLC Protects Its Trade Secrets and Other Confidential Information**

23.    FLC requires that its confidential and proprietary information be kept strictly confidential by its employees and restricts access to this information. FLC uses highly secure SAP databases to organize, maintain, secure, and access its confidential and propriety

-5-

information. SAP business software has a worldwide reputation for being the gold-standard in secured database systems.

24.    FLC's SAP system is a password-protected, centralized information management system that includes strict controls on access by employees. Under this centralized system, employees are restricted from entering certain confidential and propriety information, including formula changes, at individual facility locations. Rather, all such changes are entered into the computer system by one specific employee at a centralized location in Illinois. In addition, FLC's prior AS-400 mainframe server, which continues to be accessible, remains password-protected and is housed in a secured location.

25.    In addition, FLC takes other specific measures to preserve the confidentiality of its proprietary information in its computer systems, including, but not limited to, the following:

(a)    FLC restricts access to its computer network, computerized information (including its SAP databases), and computers through the use of passwords.

(b)    FLC restricts access to the confidential and propriety information in its SAP database, including chemical formulas, by providing access on a case-by-case basis only to those managers who have an ongoing need to access such information.

(c)    FLC prohibits the use of its property, materials or facilities not directly related to FLC's business, or the removal or borrowing of FLC's property without permission.

(d)    FLC restricts access to its facilities by, for example, requiring a key for after-hours access and, in particular, requiring a key for access at any time to the facility at which Nancy Hudak worked.

(e)    FLC requires all of its employees to sign an Employee Handbook stating that the employee has received and understands policies which prohibit employees from misappropriating, using or improperly disclosing any confidential, proprietary and/or trade secret information belonging to FLC. FLC also requires all of its employees to sign an acknowledgment that they have received and agree to abide by the Fuchs Petrolub Code of Conduct that prohibits the misappropriation of the company's property.

-6-

(f)     FLC's Employee Handbook prohibits employees from using or disclosing FLC's confidential business information for any purpose other than to advance FLC's business interests.

(g)     Upon an employee's separation from FLC, any passwords that he or she may have been given to access the company's computer network and systems are immediately disabled to prevent any further access by that employee, and any keys to company facilities in that person's possession are confiscated.

26.     FLC rigorously maintains the confidentiality of its proprietary and business information because the information provides FLC with a competitive advantage in the marketplace from which FLC derives economic value.

27.     FLC has spent millions of dollars and many years developing and marketing a variety of complex, semi-synthetic lubricant and coolant products in order to meets its customers' and prospective customers' needs and remain competitive in the industry.  FLC's proprietary information concerning the chemical formulations for its products is unique and sets FLC apart from its competitors in the marketplace.

28.     Through its own efforts, FLC has invested substantial time and money in developing its line of products, analyzing its competitors' products, and developing information and knowledge about its products, the industry, and its customers and their needs.  The information and data that FLC maintains in its databases concerning these issues are not publicly available.

29.     FLC's confidential and proprietary information is of tremendous value to FLC and could give any one of its competitors who acquired that information, including Nancy Hudak's new employer, an unfair competitive advantage.  A competitor could use FLC's information, such as its chemical formulas and raw materials data, to develop an identical product, to unfairly price its products and services, or to move business and/or long standing customer relationships away from FLC.

-7-

**E.    Nancy Hudak's Employment with FLC**

30.    Nancy Hudak was employed by Luscon Industries Corp. from November 1978 to December 1982, and was rehired by Luscon in August 1985. FLC acquired Luscon in January 1988 and retained Hudak as an employee of FLC.

31.    Until her resignation in 2007, Hudak worked at FLC's Northeast Division facility in East Haven, Connecticut, which consists of a manufacturing plant with an attached laboratory. For approximately 15 years prior to her resignation, Hudak held the title of Laboratory Director of FLC's Northeast Division. During that time, Hudak visited FLC's Illinois office on occasion and regularly spoke by telephone with FLC employees in Illinois. In addition, until approximately a year ago FLC's primary mainframe server, the AS-400, was located in Illinois and housed FLC's confidential and proprietary information and that Hudak regularly accessed in the course of performing her duties. Although FLC's current SAP data server is housed outside Illinois, the AS-400 server continues to be accessible and was accessed by Hudak over many years throughout the course of her employment. The AS-400 server also contained the confidential and proprietary data that Hudak accessed on August 30 and 31, 2007.

32.    As Laboratory Director, Hudak's responsibilities included developing formulas for manufacture at the Northeast Division site, modifying formulas developed at other facilities so that the products could be manufactured at the Northeast Division site, and modifying formulas to meet customer-specific requirements. In addition, Hudak was responsible for managing technical service activities for the Northeast Division in support of FLC's sales efforts and managing quality control activities. In this capacity, she supervised two laboratory employees: the Quality Control Technician, who conducted quality control testing of products,

-8-

and the Technical Services Technician, who conducted testing of samples from the field to determine if they were working correctly in the customer's processes.

33.     The research, development and technical service work that Hudak was involved with and oversaw while at FLC was confidential and proprietary to FLC.  To carry out her duties and responsibilities, Hudak was given access to all of the formulations for FLC's products.  She has intimate knowledge of FLC's formulations, including FLC's key formulations that are unique within the industry.

34.     While employed by FLC, Hudak had access to its computer network and databases, including the SAP database and AS-400 mainframe computer that contains FLC's propriety information such as chemical formulas and blends for its existing products and products in development, raw material information (such as composition, sources, and specifications), material cost estimates, customer information, competitor data, and competitor product information.  Through her access to those programs, Hudak routinely obtained and reviewed confidential and proprietary information throughout the course of her employment with FLC, including, but not limited to, chemical formulations.

35.     FLC has never authorized Hudak to attach any type of external hard drive or other similar device to her computer, nor has FLC ever authorize Hudack to download FLC's confidential and proprietary information to an external hard drive or other such device.

36.     Hudak signed a Receipt & Acknowledgement of FLC's Employee Handbook in which Hudak specifically acknowledged the following: "a) All employees are reminded to exercise proper care of company records and to avoid discussing confidential business matters with persons not employed by Fuchs Lubricants Co., and b) The Company provides office equipment, machines and supplies needed for the efficient performance of job duties.  Do not

-9-

remove or use company property for personal use unless authorized by management; and c) The following rules [ … ] are intended to serve as a general guideline including other similar behavior which may be subject to disciplinary action: Theft or unauthorized removal of company property …"

37.    Hudak also signed an acknowledgment form acknowledging that she had received a copy of the Fuchs Petrolub Code of Conduct, that she had read the code and understood its contents, and personally agreed to abide by its provisions. The Code of Conduct specifically prohibits the misappropriation of Fuchs Petrolub property.

**F.    Nancy Hudak's Resignation From FLC**

38.    On Tuesday, September 4, 2007, Hudak informed FLC's Vice President David Clark ("Clark") by e-mail that she was resigning her employment with FLC. Clark spoke directly with Hudak that same day and asked her why she was leaving. Hudak offered no reason, only saying that "it was time." Clark asked Hudak if she had accepted an offer of employment elsewhere, but she refused to tell Clark. Clark informed her that FLC had a legitimate right to know, but Hudak replied that she was "not going to tell [Clark] anything."

39.    Clark immediately contacted Christian Bigelow, Vice President of Legal for FLC, to inform him of Hudak's resignation and her refusal to provide the name of her future employer. Bigelow contacted Hudak by telephone, however she again refused to state whether she had accepted employment with a competitor. Because she would not confirm whether she was going to work for a competitor, her resignation was accepted with immediate effect. Bigelow then had Hudak's computer access terminated and asked Bob Nargi, the plant manager at the East Haven facility, to ensure that Hudak left the building.

-10-

40.     Hudak left FLC's building within approximately four hours of tendering her resignation.

41.     On approximately October 2, 2007, Clark learned that Hudak had accepted employment with Hangsterfer's Laboratories. Hangsterfer's develops and manufactures metalworking lubricants and is a direct competitor of FLC, particularly in the Northeast.

**G.    Discovery of Nancy Hudak's Misappropriation of FLC's Trade Secrets and Other Confidential Information**

42.     On approximately October 8, 2007, FLC retained DOAR Litigation Consulting to perform a forensic analysis of Hudak's computer and FLC's systems to determine what information Hudak had accessed prior to her resignation. Up until the time that Hudak's computer was provided to DOAR for analysis, it was kept at the FLC laboratory in East Haven, Connecticut, which is a locked facility to which only laboratory employees have key-access. Hudak's computer was password-protected.

43.     The forensic analysis revealed evidence indicating that on Thursday and Friday, August 30 and 31, 2007, immediately before the Labor Day holiday weekend and her subsequent resignation the following Tuesday, Hudak had accessed and downloaded information from FLC's secure databases to an external hard drive attached to her office computer.

44.     More specifically, the forensic analysis revealed that Hudak attached an external hard drive to her FLC computer on those two days, and that multiple files, including several that contain references to Ecocool S-761, were accessed from that external hard drive through her computer on or about those same dates.

45.     There was no reason for Hudak to access the 761 formula in order to perform any of her duties.

-11-

46.    In addition to accessing the 761 formula, Hudak also accessed and may have downloaded to the external hard drive other confidential and propriety information from the FLC database, including, but not limited to, material cost estimate (pricing) files, raw material files indicating product sources and specifications, competitor information files, and blend sheet files.

47.    Although Hudak had access to the FLC databases by virtue of her position and role in the company, she was never given any authority to access and download confidential and proprietary information, including product formulas, to her personal external hard drive. Nor was Hudak given any authority to use or disclose FLC's confidential and proprietary information for any purpose other than for a legitimate FLC business purpose.

48.    Hudak did not request permission to or inform anyone at FLC that she had attached an external hard drive to her FLC computer. She also did not leave an external hard drive or other similar type device at FLC.

49.    On approximately October 17, 2007, FLC's attorneys sent a letter to Hudak advising her that FLC discovered she had accessed confidential and propriety computer files prior to her resignation and demanding that she return to FLC all files, documents, and other company property that had removed from FLC.

50.    To date, neither FLC nor its attorneys have received any response from Hudak or any explanation as to why she attached an external hard drive to her computer only days before resigning from FLC, why she accessed FLC's confidential and proprietary formulations and other confidential and proprietary business information, and why she has these confidential and proprietary files on her external hard drive.

### COUNT I
### VIOLATION OF THE COMPUTER FRAUD AND
### ABUSE ACT (18 U.S.C. § 1030 *et seq.*)

-12-

51.    FLC repeats and realleges the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52.    FLC's computer systems and databases are part of a password-protected, centralized information management system to which employee access is strictly controlled. Authorized FLC employees access FLC's computer systems and databases to organize, maintain, and use FLC's confidential and proprietary information to carry out their assigned job duties and responsibilities.

53.    Hudak was not authorized by FLC to access its computer systems and/or its computerized information to access and download FLC's confidential and proprietary information, including FLC's product formulations. Hudak was not authorized to access and/or use FLC's confidential and proprietary information at anytime and for any purpose other than for a legitimate FLC business purpose.

54.    Through these actions, Hudak has:

(a)    intentionally accessed the FLC computer system without authorization or exceeded her authorized access to obtain information from FLC's protected computer in violation of 18 U.S.C. § 1030(a)(2)(C);

(b)    knowingly and with intent to defraud, accessed FLC's protected computer without authorization or exceeded her authorized access, and by means of such conduct, furthered the intended fraud and obtained valuable information resulting in damage exceeding $5000.00 in violation of 18 U.S.C. § 1030(a)(4);

(c)    knowingly caused the transmission of a program, information, code or command, and as a result of such conduct, intentionally caused damage to FLC's protected computer in violation of 18 U.S.C. § 1030(a)(5)(A)(i);

(d)    intentionally accessed FLC's protected computer without authorization, and, as a result of such conduct, recklessly caused damage in violation of 18 U.S.C. § 1030(a)(5)(A)(ii);

(e).    intentionally accessed FLC's protected computer system without authorization and caused damage in violation of 18 U.S.C. § 1030(a)(5)(A)(iii).

-13-

55.    As a result of Hudakr's conduct as alleged above, FLC has suffered damages or loss aggregating at least $5,000 and because its remedy at law may be inadequate or incomplete, seeks injunctive relief to recover and protect its information, its goodwill, and other legitimate business interests.

**COUNT II**
**ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS**
**(Illinois Trade Secrets Act, 765 ILCS § 1065 *et seq.*)**

56.    FLC repeats and realleges the allegations contained in paragraphs 1 through 55 above as if fully set forth herein.

57.    The proprietary business and customer information entrusted to Hudak by FLC constitutes trade secrets because FLC derives independent economic value from that information, such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use, and because the information is the subject of reasonable efforts to maintain its secrecy.

58.    On information and belief, Hudak has misappropriated and/or threatens to misappropriate, FLC's trade secrets without FLC's consent in violation of the Illinois Trade Secrets Act.

59.    In Hudak's similar role at Hangsterfer's Laboratories, Hudak will inevitably disclose FLC's trade secrets and/or confidential information.

60.    Hudak has been and/or will be unjustly enriched by her misappropriation of FLC's trade secrets and/or confidential information, and, unless restrained, she will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate FLC's trade secrets and confidential information.

-14-

61.    Upon information and belief, Hudak's misappropriation has been willful and malicious.

62.    As a result of Hudak's actions, FLC has been injured and faces irreparable injury. FLC is threatened with losing customers, income and goodwill in amounts which may be impossible to determine unless Hudak is enjoined and restrained by order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, FLC prays for the following relief:

A.    That Hudak, along with her respective agents, employers, employees, attorneys and those persons in active concert or participation with them, be temporarily, preliminarily and permanently enjoined from:

1.    misappropriating or threatening to misappropriate FLC's trade secrets and/or other confidential information;

2.    revealing or utilizing FLC's proprietary information, trade secrets and confidential information;

3.    assuming a position with Hangsterfer's Laboratories that would require her to inevitably use or disclose FLC's trade secrets and/or other confidential information.

B.    That Hudak, along with her respective agents, employers, employees, attorneys and those persons in active concert or participation with them, be specifically required to return to FLC all trade secrets and confidential or proprietary information in her possession, custody or control, including copies thereof; and

C.    That Hudak, along with her respective agents, employers, employees, attorneys and those persons in active concert or participation with them, be ordered to account for the

-15-

whereabouts of and return all of FLC's trade secrets and/or other confidential information that are in Hudak's possession, custody and control.

      D.      That Hudak, along with her respective agents, employers, employees, attorneys and those persons in active concert or participation with them, be ordered to produce for inspection all computers in her possession, custody and/or control on which FLC information may reside.

      E.      Awarding FLC damages it has suffered, in an amount to be proven at trial;

      F.      Awarding FLC exemplary damages for Hudak's willful and malicious misappropriation of trade secrets;

      G.      Awarding FLC actual or reasonable attorney's fees and the costs of this action, pursuant to the Illinois Trade Secrets Act;

      H.      Awarding FLC punitive damages;

      I.      Ordering Hudak and Hangsterfer's Laboratories to disgorge all monies obtained as a result of her improper actions; and

      J.      Awarding FLC such other and further relief as the Court deems equitable and just.

                Respectfully submitted,

                FUCHS LUBRICANTS CO.

                By _____

                    One of its Attorneys

Daniel F. Lanciloti
Janet V. Siegel
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000

CH1 11339084.1

## VERIFICATION

David Clark, pursuant to 28 U.S.C. § 1746, states as follows:

1.     I hold the title of Vice President for Fuchs Lubricants Co. ("FLC").

2.     I have full knowledge of and am competent to testify to all matters stated herein.

3.     I have read FLC's Verified Complaint for Injunctive and Other Relief, and the

factual allegations contained therein are true and correct to the best of my

knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of October, 2007.

_David Clark_

-17-