IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUCHS LUBRICANTS CO., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> NANCY HUDAK, an individual, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 07 C 6140 <br><br> District Judge Harry D. Leinenweber <br> Magistrate Judge Sidney I. Schenkier |

**PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME
TO COMPLETE JURISDICTIONAL DISCOVERY AND RESPOND TO
DEFENDANT'S JURISDICTIONAL MOTION**

Plaintiff, Fuchs Lubricants Co. ("FLC"), by and through its attorneys Daniel Lanciloti and Janet Siegel of Seyfarth Shaw LLP, hereby moves this Court for the entry of an Order enlarging the time for FLC's counsel to conduct the deposition of Defendant Nancy Hudak ("Hudak") on the issue of personal jurisdiction and to enlarge the time for FLC to file its brief in opposition to Hudak's motion to dismiss for lack of personal jurisdiction. In support of this Motion, FLC states as follows:

1. On October 30, 2007, FLC filed with this Court a Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunctive Relief alleging that Hudak, a former FLC employee, had accessed and downloaded confidential and propriety information from FLC's computer network without authorization, and seeking to enjoin Hudak from using or disclosing, or threatening to use or disclose, that information.

CH1 11358821.1

2. On October 31, 2007, FLC filed a Motion for Limited, Expedited Discovery and to Preserve Evidence.

3. FLC's motion is supported by the sworn testimony of Robert Fried and David Clark. In a nutshell, Mr. Fried and Mr. Clark's testimony states that, just before resigning from FLC, Hudak attached an external hard drive to her FLC computer and downloaded FLC's confidential and proprietary information to that external hard drive. She then left her employment with FLC and took the hard drive with her. FLC later discovered that Hudak had begun working for Hangsterfer's Laboratories, a direct competitor of FLC.

4. On November 5, 2007, Hudak, through her attorney, filed a motion to dismiss based on lack of personal jurisdiction. Although the Memorandum of Law filed by Hudak's counsel categorically denied the material allegations of the complaint, those denials were not based on any declaration or other sworn testimony by Hudak or anyone else.

5. On November 6, 2007, this Court heard arguments on the parties' motions. At the hearing, Hudak's attorney, David Ritter, once again represented to the Court that Hudak had not taken any hard drive or information from FLC. Specifically, Mr. Ritter stated:

> **MR. RITTER: If I may Your Honor.**
>
> **They are under – since they are talking about some of the merits of the case, let me delve into that a little since I have spoken to the client.**
>
> **She doesn't have any external hard drive. It was not her personal external hard drive as they alleged in David Clark's affidavit attached to their complaint. It was company property. She purchased it with company funds in about 2005 or 2006. She used it in the laboratory to download information and transfer that from computer to computer.**

**Now, she left it there. I don't know where they looked but she left it there. She told me what piece of equipment it was hooked up to when she left. She told me that others in the lab used it. She told me that they used it routinely. She did not leave with it. She did not take a formula. And she has no information that they are looking for.**

(A copy of the transcript of the November 6, 2007 hearing is attached hereto as Exhibit A.)

6. Following the hearing, the Court entered an Order (the "Order") enjoining Hudak from using or disclosing "any confidential or proprietary information that Hudak obtained from FLC, including but not limited to any confidential or proprietary information regarding FLC's product known as Ecocool S-761."

7. The Order further provided, in part:

> That on or before November 13, 2007, Hudak her officers, agents, servants, employees, attorneys and all parties in active concert or participation with her, who receive actual notice of this order by personal service or otherwise shall produce to FLC's counsel for examination any computer equipment, including, but not limited to, discs and hard drives, external hard drives, thumb drives, tape drives, or other electronic storage media that is in their possession, custody or control that currently contains or at any time in the past contained any of FLC's confidential or proprietary information, including but not limited to any confidential or proprietary information regarding FLC's product known as Ecocool S-761.

8. The Order also required Hudak to make herself available on or before November 13, 2007 for a telephonic deposition regarding the issues raised in her Rule 12(b)(2) Motion to Dismiss and set a briefing schedule on that motion.

9. On November 13, 2007, the very last day for Hudak to produce computer equipment pursuant to this Court's Order, Ritter called FLC's attorneys and stated that Hudak had lied to him. Ritter explained that he had spoken to Hudak on November 12, 2007 to prepare her for her deposition and during that conversation, Hudak admitted to Ritter that she did in fact

3

possess the external hard drive that FLC seeks in this lawsuit. She also admitted that the external hard drive contained FLC's information which she downloaded prior to leaving FLC. Upon instruction by Ritter, Hudak boxed up the external hard drive and mailed it overnight to Ritter.

10. After receiving the external hard drive, Ritter immediately delivered it to FLC's attorneys. FLC's attorneys received the external hard drive on November 14, 2007 and immediately sent it to FLC's forensic computer consultant to analyze the hard drive and determine the nature and extent of Hudak's conduct.

11. During the November 13, 2007 telephone conference, counsel for both parties discussed whether they should hold off on proceeding with the personal jurisdiction issue and focus their efforts on determining (a) what information exists on the external hard drive, (b) what Hudak did with the information contained on the external hard drive, and (c) whether the parties could resolve this matter up front without incurring more fees and costs on jurisdictional issues. During those discussions, Ritter represented that his client might be willing to consent to personal jurisdiction before this Court for purposes of resolving this litigation.

12. In addition, FLC's forensic computer consultant has received and is now examining the external hard drive to determine the nature and extent of Hudak's conduct. The parties are exploring a possible resolution to this dispute which may include: (a) Hudak consenting to personal jurisdiction, and (b) conducting some agreed upon discovery to determine the extent to which Hudak may have used and/or disclosed any confidential or proprietary information that she downloaded from FLC's computer network to the hard drive she took upon her resignation.

13. The parties agreed that their interests are best served by postponing jurisdictional discovery until the forensic analysis is complete and the negotiations concerning potential non-

jurisdictional discovery is concluded. Thus, counsel for the parties agreed to hold off on completing jurisdictional discovery while FLC sought leave of court to enlarge the time for completing that discovery and briefing the pending motion.

14.     This motion is brought in good faith and not for purposes of delay.

WHEREFORE, FLC requests that the Court grant its motion for enlargement of time and enter an order:

(a)     granting FLC up to and including December 4, 2007 to complete the deposition of Hudak on the personal jurisdiction issues;

(b)     granting FLC up to and including December 11, 2007 to file its response in opposition to Hudak's motion to dismiss for lack of personal jurisdiction; and

(c)     granting Hudak up to and including December 18, 2007 to file her reply in support of her Motion to Dismiss for Lack of Personal Jurisdiction; and

(d)     granting any other and further relief that this Court deems equitable and just.

Respectfully Submitted,
FUCHS LUBRICANTS CO.


By: s/ Daniel F. Lanciloti
One of its Attorneys

Daniel F. Lanciloti
Janet V. Siegel
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

# EXHIBIT A

```
                                                                    1

              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION


FUCHS LUBRICANTS COMPANY,          )
                                   )
           Plaintiff,              )
                                   )
   vs.                             )   07 C 6140
                                   )
NANCY HUDAK,                       )   Chicago, Illinois
                                   )   November 6, 2007
           Defendant.              )   9:30 o'clock a.m.


           TRANSCRIPT OF PROCEEDINGS - MOTION
     BEFORE THE HONORABLE HARRY D. LEINENWEBER



APPEARANCES:


For the Plaintiff:        SEYFARTH SHAW
                          MR. DANIEL F. LANCILOTI
                          MS. JANET V. SIEGEL
                          131 South Dearborn Street
                          Chicago, IL 60604
                          (312) 460-5000


For the Defendant:        NEAL, GERBER & EISENBERG
                          MR. DAVID B. RITTER
                          Two North LaSalle Street
                          Chicago, IL 60602
                          (312) 269-8000

Court Reporter:           FEDERAL OFFICIAL COURT REPORTER
                          MS. KRISTA FLYNN BURGESON
                          219 South Dearborn Street
                          Chicago, Illinois 60604
                          (312) 435-5567
```

2

1  THE CLERK:  07 C 6140, Fuchs Lubricants versus
2  Hudak.
3  THE COURT:  Good morning.
4  MR. LANCILOTI:  Good morning, your Honor.  Dan
5  Lanciloti on behalf of the plaintiff, Fuchs Lubricants, along
6  with Janet Siegel.  Also, in court today is in-house counsel
7  for Fuchs Lubricants, Christian Bigelow.
8  MR. RITTER:  Good morning, your Honor.  David Ritter
9  on behalf of the defendant.
10  THE COURT:  All right.
11  There is a motion for a TRO?
12  MR. LANCILOTI:  Yes, that is our motion.
13  THE COURT:  Okay.
14  MR. RITTER:  Yes, we were actually served -- the
15  defendant was -- the papers actually caught up with her
16  yesterday.  We are here.
17  Also, late yesterday afternoon we filed a motion to
18  dismiss for lack of personal jurisdiction.  Counsel has
19  received that.
20  So, before we address the TRO we would like to
21  address the jurisdictional issue.
22  MR. LANCILOTI:  Your Honor, obviously our position is
23  we came into court on the TRO.  We would like to have that
24  heard.
25  The jurisdictional issues, I think they are questions

1  of fact based on the two affidavits, and I would like some
2  time to take some very limited -- and we can do it at the
3  same time if you grant the other limited discovery, at the
4  same time and then have an opportunity to come in and address
5  that.
6          We did not get that motion until 5:00 o'clock
7  yesterday dealing with the personal jurisdiction issue.
8          MR. RITTER:  And as I said, defendant wasn't served
9  until yesterday, so we were pretty quick in getting something
10 on file.
11         If we do it the way Mr. Lanciloti proposes then the
12 defendant will be incurring significant costs and they are
13 going to want to go into the merits of this case and expedited
14 discovery when the Court may not have jurisdiction for the
15 matter.
16         So, that is great hardship.  This is an individual
17 person, your Honor.
18         MR. LANCILOTI:  But I think, your Honor, given the
19 situation we are here before the Court on, the apparent
20 misappropriation of a formula for my client's top selling
21 product, that if any time is wasted in securing a temporary
22 restraining order on that I think that that could result in
23 irreparable harm to my client, and that once that information
24 is out there, it is out there, and it can't be brought back
25 in.

4

         I think there is no harm to Ms. Hudak to have a TRO entered today that says, You will not use or disclose that information, and you will turn over the hard drive that you connected to the computer to allow us to look at it to see what you downloaded and what you did with that information that you downloaded.

         There is no harm to her in doing that. And at the same time we could be conducting expedited discovery on that issue as well as the jurisdictional issue.

         MR. RITTER: If I may, Your Honor.

         They are under -- since they are talking about some of the merits of the case, let me delve into that a little since I have spoken to the client.

         She doesn't have any external hard drive. It was not her personal external hard drive as they allege in David Clark's affidavit attached to their complaint. It was company property. She purchased it with company funds in about 2005 or 2006. She used it in the laboratory to download information and transfer that from computer to computer.

         Now, she left it there. I don't know where they looked but she left it there. She told me what piece of equipment it was hooked up to when she left. She told me that others in the lab used it. She told me that they used it routinely. She did not leave with it. She did not take a formula. And she has no information that they are looking

5

1  for.

2          MR. LANCILOTI: Your Honor, none of this is in any
3  affidavit or in any type of sworn testimony at all.
4          Ms. Hudak submitted the --
5          THE COURT: They just got the papers yesterday.
6          MR. LANCILOTI: No, they have had the actual motion
7  for over a week now, Judge.
8          They filed their motion to dismiss for lack of
9  personal jurisdiction and --
10         THE COURT: Let me ask you this: If there isn't
11 anything, then there is no harm in the TRO?
12         MR. RITTER: Your Honor, I don't object to a limited
13 TRO that says that she will not disclose information that is
14 confidential, that is proprietary, to Fuchs.
15         However, I don't want to go off on expedited
16 discovery that can easily run into the tens of thousands of
17 dollars, if not more, before the jurisdictional issue is
18 resolved.
19         What I would propose is that you enter that limited
20 TRO, we are okay with that, but that they respond to our
21 jurisdictional issue in a short time frame, and we will then
22 file a reply brief in a short timeframe.
23         We can have this fully briefed within a week, and
24 then before we go charging into discovery into an issue that I
25 don't think will lead anywhere, at least we will know if this

1   Court has jurisdiction for an individual who has not been in
2   Illinois and not in business for 25 years, and who comes here
3   at most 2 days a year, and what he they are basing
4   jurisdiction on is phone calls, E-mails, and accessing a
5   computer they allege is here.
6           That is not enough for jurisdiction.
7           MR. LANCILOTI:  There is no cost associated for
8   Ms. Hudak for us to look at the computer and look at the hard
9   drive.
10          If she claims she doesn't have a hard drive, Your
11  Honor, then -- she did not leave one.  Two days before she
12  left our facility there is evidence that in the afternoon
13  before a long weekend she connected a hard drive to that
14  computer and accessed files that she had no business looking
15  at.
16          THE COURT:  My understanding is she contends she does
17  not have any such hard drive.
18          MR. RITTER:  That is correct.
19          THE COURT:  So, if I order her to produce that hard
20  drive, then all she has to do is file some kind of an
21  affidavit that she doesn't have one and that would solve that,
22  right?
23          MR. RITTER:  Obviously she cannot produce what she
24  does not have.
25          THE COURT:  Right.

```
 1         MR. LANCILOTI:  Your Honor, --
 2         THE COURT:  That seems to me to be a reasonable
 3  compromise, that we will enter a TRO restraining her from
 4  disclosing any confidential information that she possesses
 5  owned by the plaintiff, and that she turn over any hard drive
 6  in her possession that contains any confidential information
 7  from the plaintiff.
 8         MR. LANCILOTI:  Could I add to that, Your Honor, that
 9  it would -- I would be afraid that she has already wiped that
10  hard drive clean and so it wouldn't contain it.  I would be
11  concerned that she produce the hard drive that --
12         THE COURT:  The hard drive that at any time contained
13  confidential information, we will put it that way.
14         MR. RITTER:  However you want to word it.
15         THE COURT:  And she will have to produce it, and then
16  your people can determine whether or not anything has been
17  removed.
18         How is that?
19         MR. LANCILOTI:  The only other issue, your Honor, is
20  if she had connected anything to her -- I don't know if she
21  does, we were waiting for discovery, but to the nature and
22  extent that she has connected anything to a personal computer
23  at her home that would have our information.
24         Would that extend to that as well?
25         THE COURT:  Any computer equipment containing any --
```

8

1　that at any time, including the present, that contained or
2　that contains any confidential information owned by the
3　plaintiff.
4　　　　　MR. RITTER:  And just so I am clear, when I respond
5　to --
6　　　　　THE COURT:  Why don't you draw up an order, agreed
7　form order, along those parameters and I will sign it.
8　　　　　MR. LANCILOTI:  Just so I am clear, when my client
9　responds that she has none of that information, you will be
10　satisfied with an affidavit attached to a letter by me?
11　　　　　MR. LANCILOTI:  I don't know what her response is
12　going to be, and I don't want to commit to anything as I am
13　standing here.
14　　　　　If she is saying she doesn't have anything, and if
15　she is saying none of her computers have anything, then she is
16　testifying under oath.
17　　　　　THE COURT:  She can't produce what she doesn't have,
18　and so if you determine she is lying, then she will suffer the
19　consequences.
20　　　　　MR. RITTER:  So be it.
21　　　　　THE COURT:  If that is later determined.
22　　　　　MR. RITTER:  Right.
23　　　　　THE COURT:  And also the jurisdiction.
24　　　　　So, that will then be the order of the Court.
25　　　　　Draw up an agreed order so you both understand what

9

```
 1  the agreement contains, and then you will respond to the
 2  motion on jurisdiction -- how much time do you need?
 3          MR. RITTER:  I would like to have an opportunity to
 4  just conduct some expedited discovery on her on that issue,
 5  because she mentions contacts in Illinois, and we have
 6  mentioned --
 7          THE COURT:  How about a telephonic deposition?
 8          MR. LANCILOTI:  Your Honor, if she was in Illinois,
 9  they --
10          And I have handled a case just like this with the
11  same allegations earlier this year in the same industry, and
12  all the company did was go back through her expense accounts.
13          If she was in Illinois on business they have expense
14  accounts that would say exactly when she was here.
15          Her recollection is that she is rarely here.  The
16  deposition of her will be, I am here two days every year or so
17  on business.  I haven't been in the State other than that for
18  25 years.
19          THE COURT:  Why don't you take a telephonic
20  deposition?  I will give you permission to do.
21          MR. RITTER:  Limited solely to the jurisdictional
22  issues?
23          THE COURT:  Yes, limited to jurisdiction.
24          MR. LANCILOTI:  And then with respect to our motion
25  for expedited delivery, your Honor, on the other issues, is
```

1  that still open?

2          THE COURT:  I will continue that pending jurisdiction

3  to grant it.

4          If I have jurisdiction of the case then of course you

5  will proceed with discovery normally, you know, and I can do

6  it on an expedited basis.

7          How soon would you like to respond to the motion on

8  jurisdiction?

9          MR. LANCILOTI:  I can take the telephonic deposition,

10 your Honor, within 7 days.  I can respond to the motion within

11 14 days.

12         Would that be acceptable?

13         THE COURT:  14 days from today?

14         MR. LANCILOTI:  14 days from today, yes.

15         THE COURT:  All right.

16         And then 7 day to reply.

17         MR. RITTER:  That puts me right over the Thanksgiving

18 day holiday.

19         MR. LANCILOTI:  No, I am --

20         MR. RITTER:  Oh, he is going to respond on the 20th?

21         THE CLERK:  Correct.

22         MR. RITTER:  Then how about one extra day?  How about

23 on the 28th?

24         THE COURT:  Fine, the 28th.

25         Then I will rule in December.

11

```
1          THE CLERK:  December 11th.
2          THE COURT:  December 11th will be the ruling.
3          MR. LANCILOTI:  Okay.
4          And that is, obviously, assuming she will be
5  available in 7 days for a telephonic deposition?
6          MR. RITTER:  I will make her available.
7          THE COURT:  Yes, he will make her available.
8          MR. LANCILOTI:  And then just to clarify the TRO,
9  your Honor, and I just want to make sure, it is an order
10 enjoining Mrs. Hudak and anyone acting in concert with her
11 from using or disclosing any confidential information --
12         THE COURT:  Any confidential information known by the
13 plaintiff and requiring her to produce for examination any
14 computer or computer equipment that currently or at any time
15 contained confidential information owned by the plaintiff that
16 is in her possession or in the possession of people in concert
17 with her.
18         How is that?
19         MR. LANCILOTI:  Okay.
20         THE COURT:  So, you draw it up and agree to form and
21 I will sign it.
22         MR. LANCILOTI:  How much time do we have for that?
23 Could we get that in 7 days?
24         MR. RITTER:  That is fine.
25         THE COURT:  Yes, I would presume her computer
```

```
                                                                    12
 1  equipment is available.
 2          MR. LANCILOTI:  Thank you very much.
 3          MR. RITTER:  Thank you.
 4      (Proceedings concluded.)
 5
 6
 7
 8              C E R T I F I C A T E
 9
10          I, KRISTA FLYNN BURGESON, do hereby certify
11  that the foregoing is an accurate transcript of the
12  proceedings had in the above-entitled case before the
13  HONORABLE HARRY D. LEINENWEBER, one of the Judges of said
14  Court, at Chicago, Illinois, on November 6, 2007.
15
16
17  _____      11-16-07
        Official Court Reporter           Date
18      United States District Court
        Northern District of Illinois
19          Eastern Division
20
21
22
23
24
25
```